case. United States v. Weatherspoon. Mr. Earle, good morning. Good morning. May it please the court, my name is Frederick Orwick. I'm an assistant public defender in the Middle District of Pennsylvania. I represent the appellate, Senator Weatherspoon. I'd like to reserve two minutes of my time for the following cases. You didn't hear yesterday, right? I did. I was just sneaking yesterday to see the arguments. With respect to the first issue in this case, which is whether the district court could consider Mr. Weatherspoon's successive 3582 motion following the decision in Fremont, our position is the court need not detain itself long over this issue. One, there was a raise in the district court as a bar of public government and thus waived. Two, there's nothing in the text or language of section 3582 that necessarily precludes a second or subsequent petition. Certainly Congress knows how to do that. A reading of the habeas corpus provisions in section 2254, 2255. But doesn't the language of that statute speak in the singular a motion? It doesn't talk about motions in the plural? It doesn't specifically address the question. I guess it would be a better way of looking at it. Well, certainly other circuit courts have looked at this precise issue and have come to the conclusion, all of them have looked at the issue and have said that only one motion, Well, I think that this case is distinguishable from those. First of all, at least in some of them, their concerns were salutary. Law of the case, race judicata, collateral estoppel, and those concerns have been an exception. But the laws changed, as it did here. To the extent that the Red case from the Seventh Circuit speaks in the authority of the court, I would suggest that this case is distinguishable. Mr. Red went to the court, his 3582 motion was granted. He didn't appeal. He didn't present any argument further, request an additional time off of his sentence. Instead, he returned some months later, filed some sort of pro se request for reconsideration or modification. Is there any case law support for the idea that you can bring multiple applications under 3582? I don't think specifically under 3582. I think generally, and specifically under the Supreme Court, we said that court can revisit an issue. The laws changed, as it has here. And for that reason, we think that Mr. Witherspoon's situation is quite a bit different than those that have been addressed in some of the other circuits. Turning to the merits of his claim, we believe that the Rule 11C1C plea agreement, the binding one, was sufficiently tied to the sentencing guidelines that was based on it, at least in terms of Justice Sotomayor's concurrence in the Freedman opinion, where she says the guidelines or the guideline ranges have to form the foundation or basis for the ultimate sentence. And we know this because when we look at the plea agreement, the first thing it says on page one is a party to agree that the guidelines apply to this offense. But that plays into the pluralities argument. Justice Sotomayor, it's almost a plain statement rule, as I read it. She's saying that you need to be able to look at the record and see that the guidelines range made a difference. It influenced, it drove the sentence. Is that not what she wrote in Freedman? Well, I think it's a little unclear. She was pretty clear to me. Well, as a dissenting justice has pointed out, sometimes she says use of the guidelines have to be indicated by the party's intention. Sometimes it has to be clear from the plea agreement. Sometimes it has to be evident from the plea agreement. All right, well, indicated, clear, and evident are all a far cry from a boilerplate statement of the plea agreement saying that, of course, this plea is based on the sentencing guidelines. That's true. And if that was the only thing in this case, I don't think I'd be standing here. The critical phrase, I guess, is based on, was his sentence of 120 months based on the guidelines or was it based on the plea agreement? Both. And here's why. Just proceeding through the plea agreement, you get to the next page and it says, you know, objections to the plea agreement. But when you say both, the government and the defendant made a precise, specific agreement. You're going to get 120 months no matter what. No matter what the guideline range says, you're going to get 120 months. Was that not the agreement? No, I don't believe that was the agreement. And if you don't want that 120 months, the judge said, there's something different, you can back away. I don't think that necessarily was the agreement. Well, I mean, there's a lot more than that. But in terms of the sentence that the defendant was going to get, was it not 120 months? Yes, it was 120 months. And wasn't that the agreement about the sentence? Yes, the agreement was he gets 120 months. So what was his sentence based on? We can take a look at the plea agreement. We can tell you what it's based on. They went to the applicable guideline, which is a whole section that says specific guideline recommendations. Why is that in there if they're just coming up with a number out of nowhere? It's in there because they picked out the drug ranges that corresponded, not just the announced drugs that were found in Mr. Whitt's room, or some historical record of drugs. They picked them right out of the guideline. Does the judge have any choice about deviating from the 120-month agreed-upon sentence? Not once he accepts it. So you want us to vacate the, you want us to unravel the deal? You want us to go back to square one? Your client has authorized you to unravel the deal? No, I don't believe it is unraveling the deal. I mean, Justice Sotomayor seems to allow some exception where the agreement was premised upon some sort of guideline calculus. Well, but if, there's a bargain, as I understand it, between the guideline and this defendant that he gets 120 months in jail if, and only if, the trial judge agrees. That's correct. But we're arguing that one of the premises of that bargain is now invalid due to an alteration of the guideline sentence. So it's sort of fundamental contract law, then, that the bargain is unwound. Well, that's the state of the law, at least in this circuit, part of freedom. And I think freedom now opens the door to allow you to reconsider these types of cases where there's a sufficient length between the sentence that was imposed and the guideline. And that's the question in this case. I don't think there's anything in the plurality or the concurrent opinion from Justice Sotomayor that says a guy like Mr. Lewis who is totally ineligible, in fact, when she gets around Justice Sotomayor, gets around to addressing the dissenting justices, complaining that her scenario number two, which some members picked, is somehow arbitrary, the first thing she does in footnote nine of her opinion is, well, wait a minute. If it's 106 months, which was the guideline, and it's 53 months, as the designer suggests, well, that still works because that's just 50% off of the thing. We can figure that out. But the more important part is, if you go to the next paragraph, what she says, of course, if a CK agreement does not contain any reference to the guidelines, there's no way in the paragraph that you're going to use the guideline sentence in order to establish the term. The starting point of her discussion is, what is the sentence based on? Correct. Is it based on the guidelines, or is it based on the agreement? Well, our position would be, in this case, the party simply gave up on the variance. And that's what they told the court. Our sentence in this case is going to be somewhat lower than the applicable guideline. Now, had Mr. Lewis come into court without a C agreement, and the party made that joint recommendation, and the judge accepted it. You'd have a different case. Well, how much different, though? The party simply memorialized it in writing and agreed to it, and the judge accepted it. What would be the difference between that and coming into court and having the parties make a joint recommendation and the judge accepting it? Is it instructive that there's no discussion of criminal history or base level offenses in the agreement? I didn't hear the question. Is it instructive that there was no discussion concerning the base level offense or criminal histories in that agreement? Well, I think the base level offense is part of the specific guideline recommendations. Those numbers, they are out of the blue. Those are the Section 2D 1.1 guideline names corresponding with 50, probably a branch of 1.5 kilograms of cocaine hydrochloride or cocaine-based. Did the judge reference the guidelines when he passed? He referenced them. He said he gave consideration to them. Again, we might characterize that reference as simply border plate. Did he come to a guideline range as is required before imposing sentence? I don't believe he came to a guideline range different than that calculated by the probation office. He accepted the terms or accepted the fines of a plea agreement, which included necessarily a guideline range. And so to the extent that he accepted them, I would say that he at least complied with coming to a guideline range before accepting a plea agreement or imposing sentence. And the real elephant in the room in a lot of these cases, like the ones that were argued yesterday and these departure from the mandatory minimum, the departure from the clear offender thing, and this gentleman, they all got substantial breaks. We all know that. And parsing language, trying to decide whether it's indicated, clear, evident, based on, it seems to me that the easier solution, at least where there appears to be some eligibility. This is not the trial judge to make the decision. I think if he took this case or any of these other cases to the trial judge, laid out the facts, it seemed to cause everybody some concern that he got something way far away from the guideline range. Because most of them didn't make the correct decision. Again, isn't that the plurality's position? That is the plurality's position. But I don't know. Justice Sotomayor pours in an interesting middle ground here, it seems to me. And I think perhaps the most interesting part is, as you indicate, that when related to satisfy her test, and you do get the remand, do these clients run the risk of having the deal be unwound? And does her controlling opinion in Freeman preclude that from happening? I think she may clearly be controlling opinion in the United States, or Dillon versus the United States would preclude that. I think all of the guideline calculations and everything else that happens in sentencing remains the same. I think the only adjustment can be made is relative to the term that was imposed. So to the extent that the court accepted the rule of E.C. Montgomery Freeman, I don't think they would put the guy back in the position. I don't think anybody would want that. I'm going to trial him 10, 15 years after the fact. But when I look at footnote number nine in her concurrence, the door is pretty wide open I think he certainly has more than zero references in his plea agreement to the guidelines. And so for those reasons, we think he should be eligible. Good. Mr. Sutter, thank you very much. Mr. Houser? Good morning. William Houser on behalf of the United States. Earlier this year in the case of United States versus Thompson, a precedential opinion of this court decided on April 26th. Half the briefs were filed in this case. This court made clear that in fact Justice Sotomayor's concurring opinion in Freeman does express the holding of the court. And in Freeman, Justice Sotomayor replied that the term of imprisonment imposed by a Rule 11c1c plea agreement is in fact based upon a plea agreement. Yeah, but the plea agreement can contain guidelines, reference language, can allow the court to sentence within the guidelines, or it can just omit any reference to the guidelines. I think Justice Sotomayor's point is maybe. Maybe it's based on the guidelines. Maybe it's based on the agreement. Judge, I think what her opinion says is that it's absolutely based upon the agreement once the judge imposes the sentence. However, if that agreement expressly uses a guideline sentencing range applicable to the charged defense to establish the term of imprisonment and the range is subsequently lowered by the sentencing commission, then in fact the term of imprisonment that was imposed is based upon. Let me go along with that. Yes. So it has to be a within-guidelines sentence? No, but I think it has to be based upon in some fashion, and we're getting to that point because she gives two examples. And I emphasized when I was quoting from her opinion. That was in fact a Freeman case, wasn't it? Where there was a guideline range? Yes. In the agreement? Yes. She uses the word, though, expressly uses a guideline range. And she gives two examples as examples of how this can occur. And I'm not suggesting that these would be the only examples, but I think the most important thing about the examples that she gives is that she makes clear through the use of these examples that the agreement itself must make it apparent that the sentence is based on the guideline range that's employed. That the agreement itself must make it apparent. So for example, example number one she gives, an agreement that a specific sentencing range is the appropriate disposition of the case. That's an example where she says that leaves no doubt whatsoever. Well, you don't even agree on a number. You're just giving the court a range, and both sides are hedging their bets and agreeing as long as it's a within-guidelines sentence charge, we're fine. That's right. That's the easy case. That's right. And that's a case she says leaves no doubt whatsoever. Well, maybe there's data. I mean, why isn't Mr. Frohlich right when he says that the agreement does in fact reference the sentencing guidelines? And I'm looking at paragraph 13C. Each party reserves the right to make whatever remaining arguments it deems appropriate with regard to the application of the United States Sentencing Commission guidelines. Well, the introduction is required to consider the guidelines of sentencing. Title 18, section 3553 requires the judge to consider the guidelines regardless of whether or not there's a rule C of plea agreement. But the parties can make an argument to be sentenced within the guidelines according to this. That's right. In this case, though, there is no such agreement. And my point is that the agreement itself must expressly indicate that the sentence was based on the guidelines. And in this agreement, there's nothing that expressly indicates the sentence is based on the guidelines. The agreement certainly references the guidelines. It certainly gives the judge the idea of what the parties at that point thought were some of the relevant factors to be considered under the guidelines. Your Honor pointed out that there was no reference to criminal history category, for example. That was something that had to be decided to determine how the guidelines would ultimately  But certainly, this plea agreement referred to the guidelines. But there's nothing in the agreement that expressly indicates that the sentence to be imposed is based on the guidelines. And that's where we come to the second example, example number two. She gives the example of a plea agreement that might provide a specific term of imprisonment but also makes clear that the basis for the specified term is a guideline sentencing range applicable to the offense to which the defendant pleaded guilty. And once again, she uses the word that the agreement must make clear. The agreement itself must make it clear. So you're looking for some sort of clause in the odd, I think, in a plea. But whereas the parties acknowledge that the sentencing range is 188 to 220 months, now therefore we agree that a 200-month sentence is reasonable? That would satisfy. I would assume that would satisfy. That would satisfy. I would suggest that a sentence, if the guideline range that was indicated in the plea agreement were 188 months to 235 months and the sentence imposed or agreed upon was 188 months, I would suggest that that would also perhaps provide a basis for finding that the sentence imposed was based upon the guidelines. There's no one that says the guideline range is 188 to 235 and 94 is half of the bottom of the guidelines range. I think we get 50 percent off. Sounds right. I agree. But that also... That, in fact, was Freeman's case, wasn't it? Yes. That would also indicate from the agreement itself that the guidelines were used as a basis for the sentence to be imposed. In this particular case, there's nothing from the agreement that would suggest that the sentence was based upon the guidelines. And the applicable guideline range at the time started at 235 months. And there's nothing in the agreement indicating this is a percentage down from the agreement, from the applicable range that is the variance. This is the... Half of the top of the range. That's correct. It's also the statutory mandatory minimum for the charge that he was originally facing. So it might have been based on that. It might have been. It's not off record. What's the purpose of this language in the plea agreement that says that the government will provide a probation office with all the information relevant to the application of the United States Commission sentencing guidelines to the defendant's conduct? What's the point of that if he's supposed to get 120 months? Judge, I agree in hindsight that it really... There is no point to it. You've lost a lot of the extraneous information that is in the boilerplate that could have and should have been taken out of this. Is that your point? That's the point. But you made a deal. I beg your pardon? You made an agreement. Whether it was oversight or not, this is a contrary... No, no, and I agree with you. The point is, however, there's nothing in the agreement that indicates the basis for the sentence is the guidelines, and that's what Freeman requires, that there must be an express portion of the agreement to indicate that the sentence to be imposed is based on the guidelines. And so that's our point here, that there's nothing in this agreement that would indicate that under either example, and even under an example that could be extrapolated from those, this agreement does not make clear that the basis for the sentence was the guidelines. So it's even your argument, Justice Sotomayor, that it requires some sort of a clear statement rule or a plain statement rule? What's the right phraseology to use? Well, I'm not sure of the right phraseology. This court's Thompson opinion cited those two examples as the only examples of circumstances where a sentence would be imposed based upon the clear... But Thompson was based on the chapter four career offender guidelines. Yes. I would suggest... That took us out of the crack cocaine guidelines. Justice Sotomayor uses the words, make clear. The plea agreement must make clear. And that's the lesser standard. The other one she references is leaving no doubt. So I would suggest that at a minimum, the agreement must make clear that the basis for the specified term is a guideline sentencing range applicable to the offense. For cases that satisfy Justice O'Connor's test, do you concede that resentencing would occur without a law number proven? Justice O'Connor? Oh, I'm sorry. Sotomayor. Thank you. Until you mentioned that, I hadn't really thought that through. I think that it seems to me that simply a motion to reduce sentence would not implicate the unwinding of the agreement. But I don't know. That was my gut reaction when I heard you. And if that's something you think is important, I'd rather... It's just something I wonder about. Because if an implied term of the agreement, an essential implied term of the agreement for either side later is deemed to be a fallacy, contract principles would suggest that perhaps  I think as a practical matter, as suggested by, I think it was Justice Sotomayor, I think in the future where agreements like this favorable agreements or agreements considered favorable to a defendant are negotiated, the government would be including a waiver provision to make clear that the parties understand that this is not based upon the guidelines and the defendant waits his right to ask for a reduced sentence in the future. I think that as a practical matter will take care of that problem that you're suggesting. That's my sense of what we've discussed in our office anyway of how to handle that problem. Alternatively, the government would suggest that the judge reduce the sentence on an alternative ground as well based on his discretion to decline to reduce the sentence any further. And in his original order denying a motion to reduce sentence, the judge indicated that this amended guideline ranges still substantially above the sentence that I originally imposed. So the government would suggest that that decision would not indicate any sort of an abusive discretion, that the judge has discretion to decide not to reduce the sentence even if Mr. Wetherspoon were, if it were available to him to reduce the sentence. Could you touch on the threshold issue? This is the second 3582 motion. Yes. Many courts have looked at this and said you can't do it. Judge, I was unable to find that many courts have said that. The 11th Circuit, the 7th Circuit, the 4th. And the issue when I briefed at the, I think the 7th Circuit was the case that indicated that it couldn't be done. And then I had also cited a case regarding the rule of the case doctrine. Law of the case. Law of the case, which I concede was not raised in the district court. We have a, I think we have an NPO that says the law of the case governs. Okay. So. What about the waiver of appeal? The waiver of appeal, Judge, I think would not cover a separate, would not cover a motion under 3582C. And I did think about that. And some of the cases I saw indicated that that's not an argument that would fly. At least I didn't think so. Because of the change in law? Because it's not really, it's not an appeal. It's a separate issue. It's a motion. It's a separate motion. And it's not an appeal. So. And even the red case, it's holding is not characterized, I don't think, in jurisdictional terms. Isn't that right? You know, it's not, the word jurisdiction is not expressly used. However, I would suggest that it is a jurisdictional holding. Well, there's a tidal wave of Supreme Court case law over the last 10 years that has overwhelmed the appellate courts in reversing us in cases where we said we lack jurisdiction. I think the rule, correct me if I'm wrong, is that unless Congress specifically says that we don't have jurisdiction, then it is a claims processing rule, not a jurisdictional rule. I think that that particular argument, I agree with you, is treacherous grounds. And I thought also about the statutory language that refers to motion in the singular. However, I also thought about Section 2255, that until the gatekeeping provisions were passed, permitted repetitive filings of Section 2255 motions. So that's another thing, Judge, I think needs to be considered here along the jurisdictional argument, if you're thinking about that. What would be your argument on that? My point is to let the court know that it's there, that there are courts that have said, or seem to imply at least, that it's jurisdictional. But as a practical matter, in this particular case, from my standpoint, if Your Honor's ruled that there's no jurisdiction, Mr. Weatherspoon is going to file another motion under Amendment 750. I see my time is up. No, finish your point. And the point is that as a practical matter, in this particular case, to me that argument is there for your consideration. It's not something that I find particularly important to this case and this defendant. Good. Mr. Houser, thank you very much. Thank you very much, Mr. Bellek. Is it Olich? Yes. Just briefly, I don't think there's any risk of Mr. Weatherspoon filing a second motion under Amendment 750 because he'd be ineligible. They took away the proportional variance provision within the guidelines, so his sentence being well below and based upon apparently a variance, he wouldn't be eligible. And only to comment briefly on the plea agreement itself, it contains more than just wordplay references to the guidelines. I mean, that section on specific sentencing guideline recommendations, that's not something you find in every case. We're talking about this case, the 500 grams to 1.5 kilograms. And as we submitted earlier, we think that in combination with the other things included, it took place at the actual sentencing hearing that there was a sufficient basis to make him eligible. Mr. Weathers, thank you very much. Very good. Very well-argued case. We'll take it under advisement and we will adjourn.